WILLIAM B. ORCHARD, PLAINTIFF IN ERROR, V. SCHOOL DISTRICT NO. 70, DEFENDANT IN ERROR.

1. **School District:** BONDS. In 1873, in pursuance of a request in writing of five persons purporting to be legal voters, a special meeting was called and held of the electors of school district No. 70, of Seward county, and bonds voted, which were sold, and of which the district had the avails. *Held,* That as the election was held by *bona fide* electors of the district, who did not object to the qualifications of the persons signing the request, the court would presume that they possessed the necessary qualifications.

2. ——: ——. The power to borrow money implies the power to issue bonds or other evidence of indebtedness for its payment.

3. ——: ——: SALE: USURY. The sale of a school bond for less than its face value, if it is not a device to evade the usury laws, is not usury.

ERROR to the district court for Seward county. Tried below before GEORGE W. POST, J.

*D. C. McKillip* and *Harwood & Ames,* for plaintiff in error.

*Norval Brothers* and *G. W. Lowley,* for defendant in error.

MAXWELL, J.

This is an action upon a bond for the sum of $500, alleged to have been issued by the defendant in the year 1878, for the purpose of erecting a school-house in said district. The defendant in its answer alleges that the request for the special meeting called for the purpose of voting bonds was not signed by five legal voters of the district, for the reason that one Robert Adams, whose name was signed to said request, never signed the same, nor authorized his name to be signed thereto, and that one T. Hackney, whose name was attached thereto, never resided in nor was a qualified voter in said district.

In the answer the "defendant admits that the officers of defendant without authority from defendant executed for defendant the pretended bond in suit. That the same was made on the 30th day of July, 1873, for $500, drawing 10 per cent from date, payable annually, principal payable July 30, 1878, in pursuance of a contract entered into between said Hamilton to the officers of said district, and that the only consideration which said officers received was the sum of $400, whereby said bond was usurious, of all of which the said plaintiff had notice."

On the trial of the cause the court found for the defendant and dismissed the action.

The questions for determination are: *First,* was the special meeting called on the request of five legal voters of the

district as required by the statute? *Second.* Did the authority to "borrow money" authorize the district to issue a negotiable bond for the amount of the loan? *Third.* Did the sale of the bond for less than its face value constitute usury?

The court below found that four of the persons signing the request were legal voters in the district, but that T. Hackney who signed said request was neither a voter nor resident of said district. It does appear, however, that one J. or James Hackney was a resident of the district, and that the special meeting was held at his residence. A very large amount of the testimony was taken to prove that no such person as T. or Thomas Hackney was a resident of the district, but we do not deem this testimony material. It is pretty evident that J. Hackney or James Hackney did sign the request. It is also clearly proven that in pursuance of the request a special meeting of the voters of the district was held, at which eight votes were cast—five being in favor of the proposition and three against.

The legal voters of the district being five in number, when assembled in pursuance of the call based upon the request signed by five persons purporting to be legal voters of the district, made no objections to the qualifications of such persons, and regarded them as legal voters. And when such is the case, and the meeting had apparently authority to act, the court will not inquire into the qualifications of the persons signing the request. The case differs from that of the *State v. School District No. 9, Nuckolls Co.*, 10 Neb., 544. In that case three citizens of an adjoining state procured the formation of a school district in this state, and held a special meeting and voted, and issued bonds of the district, and sold the same. At that time there were but three legal voters in the district, and no request for a special meeting was signed by five or any number of persons. These facts were clearly proved, and the court held that a special meeting could only be called by following

the steps pointed out by the statute, viz., on the written request of five legal voters. But the case has no application to the one under consideration. Here was a meeting called and held by the *bona fide* residents of the district, and they cannot be permitted to hold a special meeting, vote bonds, and sell the same, and after receiving the avails say that there was an irregularity in calling the meeting.

The second objection was before this court in the case of *The State v. School District No. 4*, 13 Neb., 82, where it was held that the power to borrow money necessarily carries with it the authority to determine the time of payment, and to issue bonds or other evidence of indebtedness therefor. The word "borrow" as used in the statute evidently means a contract for the use of money. See also *State v. School District 24*, 13 Neb., 78. Those decisions in our view state the law correctly, and we adhere to them.

The question raised by the third objection was before this court in the case of *Armstrong v. Freeman*, 9 Neb., 11, when it was held that the sale of a note and mortgage for less than their face value, where it was not a device to evade the usury laws, was not usury, and we see no reason to change our decision on that question. The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.