# Hughes *v.* Hughes.

*Bill in Equity by Legatees against Executor, to compel Final Settlement, set aside Sale of Land, and for Account of Profits on Re-sale.*

1. *Purchase by executor or trustee at his own sale, and re-sale at profit.* A trustee is not permitted to traffic in the trust property for his own benefit, but holds the profits realized subject to be claimed by the beneficiaries on timely application; and this principle would probably apply to a sale of land by an executrix, where she was jointly interested with her sister as purchaser, and they afterwards effected a re-sale at a tenfold price; but such interest in the original purchase is not established, against the denials of the answer, merely by the deeds showing that the sister who was purchaser conveyed to the executrix, six years afterwards, a half interest in the land at the same price, and that they jointly effected the re-sale a few weeks afterwards.

2. *Correspondence of allegations and proof.*—There can be no relief on a controverted question without proof, and averments or admissions in pleadings are not open to disproof by the party making them.

APPEAL from the Chancery Court of Pickens.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 22d September, 1887, by Sallie B. Hughes and others, grandchildren of B. J. Hughes, deceased, and residuary legatees under his will, against Anna F. Hughes, the surviving executrix, who was a daughter of the testator, and against several other persons; and sought to compel a final settlement of the accounts and vouchers of the executrix, and more especially to set aside a sale of two city lots in Birmingham, or to hold the executrix liable for the price realized on a re-sale to Whitley & Trim-

VOL. LXXXVII.

ble, who were also joined as defendants to the bill. The chancellor assumed jurisdiction of the estate, and made the necessary orders for a statement of the accounts; but he refused to set aside the sale of the city lots, or to charge the executrix with the profits realized on the re-sale. The complainants appeal from the decree, and here assign this part of it as error.

E. D. WILLETT, and W. F. & J. C. JOHNSTON, for the appellants.

M. L. STANSEL, contra.

STONE, C. J.—The question pressed upon our consideration is the sale of the Birmingham lots. · The two lots were sold by the exeutrixes in 1879, to the highest bidder for cash, and brought seven hundred and sixty dollars. The widow and a daughter of the testator were the executrixes, and another daughter became the purchaser, paid the purchase-money, and a deed was made to her in 1880. The widow died soon afterwards, leaving Annie F. Hughes, the daughter, sole surviving executrix, who proceeded to execute the trusts conferred by the will. The bill was filed in September, 1887.

As we have said, the chief question pressed before us grows out of the sale of the Birmingham lots to Mary Hughes, daughter and sister of the executrixes. Complainants are grandchildren of testator, and are legatees under the residuary clause of the will. The bill charges that there was collusion between Annie F. Hughes, executrix, and Mary Hughes, the purchaser, that the lots should be purchased in the name of the latter, but that in fact the sisters were joint purchasers—thus making Annie both buyer and seller; that the title remained in Mary until 1886, and complainants did not know until then that Annie was interested in the purchase. The bill further charges that, in 1886, Mary conveyed to Annie a half interest in the lots, on a recited consideration of three hundred and eighty dollars, one half of the original purchase-price; and that about two months afterwards the two sisters, Annie and Mary, sold the lots to Whitley & Trimble for eight thousand dollars. The bill charges further, that when the first sale was made the price of lots in Birmingham was rising, and there was no necessity for making the sale at that time. The will empowered

the executrixes to sell the real estate, and allowed them ten years within which to exercise their discretion, and to make sale. Testator died in 1878.

The answers deny that Annie, the executrix, was interested in the purchase, and deny that there was any agreement that she should have any interest in it. They set up that, after Mary made the purchase, she became dissatisfied with it; and that she, Annie, agreed to take a half interest with her, in order to reconcile her to the investment she had made. The answers further deny the averment that there was no necessity for making the sale, and set up that there was a necessity for the sale of that and other property, to provide for two pecuniary legacies, aggregating four thousand dollars. The record from the Probate Court, found in the transcript before us, tends to prove the truth of this last averment. It is not charged in the bill, that the market value of the lots, when they were sold in 1879, exceeded seven hundred and sixty dollars; nor is it averred whether any, or what improvements, were put on the lots between that time and the sale to Whitley & Trimble.

The case was tried in the court below on bill and answers, and the exhibits, without any testimony save that furnished by the conveyances and the probate record. The chancellor refused to charge the executrix with the profits made on the Birmingham lots. The argument here pressed upon us is, that the naked facts—sale to Mary, in 1879, for $760; conveyance in November, 1886, by her to her sister, the executrix, of a half interest for half the cost price; and sale by the two sisters to Whitley & Trimble, for eight thousand dollars—prove that Annie was interested in the original purchase. If this proposition be maintainable, it would probably follow that the beneficiaries can claim their share of the profit realized on the re-sale. A trustee is not permitted to traffic for his own benefit in property which he holds in trust; and if he does so, the beneficiary, on timely application, may claim the profit as his.—*James v. James*, 55 Ala. 525; *Pearce v. Gamble*, 72 Ala. 341.

The facts stated are obnoxious to criticism, but they are, of themselves, not enough to overcome the denials of the answer, and make a case for relief.

It is contended in the second place, that the sale was invalid and void, because not made under the power in the will. The contention is, that the probate record shows that the sale was made under an order of court. There is nothing in this,

[Morrison Bros. & Co. v. Coleman.]

The bill not only fails to raise this question, but, properly interpreted, charges that the sale was made under the will. And if the bill had raised the inquiry, the proof fails to sustain it. There can be no relief on a controverted question without proof, and averments or admissions in pleading are not open to disproof by the party making them.—*Lehman v. McQueen*, 65 Ala. 570; *McGehee v. Lehman, Ib.* 316; *Marshall v. Howell*, 46 Ala. 318.

All other questions presented are properly for consideration in taking the account and making settlement. The settlement is yet to be had.

Affirmed.